43 F.3d 1479
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tilahun LEMMA, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70695.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 5, 1994.*
Decided Dec. 15, 1994.
 
 Before: LAY,** TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Tilahun Lemma, a citizen of Ethiopia, had his applications for asylum under 8 U.S.C. Sec. 1158(a) and for withholding of deportation under 8 U.S.C. Sec. 1253(h) denied by an immigration judge (IJ). The Board of Immigration Appeals (BIA) dismissed his appeal. The IJ and the BIA based their decisions on the finding Lemma's testimony was not fully credible.
 
 
 3
 Lemma appeals the BIA's decision on two grounds. First, Lemma argues the BIA abused its discretion by determining he was not credible. Second, Lemma argues the BIA abused its discretion in declining to consider his request for asylum on the basis of past persecution. In the event he prevails, Lemma also requests attorney fees under 28 U.S.C. Sec. 2412(b). The BIA had jurisdiction to review the IJ's decision under 8 U.S.C. Sec. 1103(A) and 8 C.F.R. Sec. 3.1(b)(2). This court has jurisdiction to review the BIA's decision under 8 U.S.C. Sec. 1105a(a).
 
 
 4
 In February 1976 Lemma was arrested after criticizing the government in a student newspaper article. He also participated in political demonstrations which led to his arrest and detention for fifteen days.
 
 
 5
 According to petitioner's testimony, in February or March of 1977 Lemma was again arrested on suspicion of involvement in a massive strike of students and workers. He was interrogated, stripped, and tortured. His mother was beaten when police came to search for him at home. His father was arrested about the same time because he had formerly been a landowner and was suspected of subversive activities.
 
 
 6
 In 1982 Lemma graduated from Addis Ababa University and was assigned to teach high school. Shortly after his assignment, he was accused of being a reactionary and forced to participate in a Marxist-Leninist study circle.
 
 
 7
 In April of 1985, Lemma was arrested for criticizing the government's resettlement program. He was imprisoned for three months and suffered torture and other deprivations. On release, he was forced to attend political education meetings every three days. When he could not tolerate further indoctrination and abuse, he sought to leave the country.
 
 
 8
 A U.S. citizen from Ethiopia sponsored Lemma to come to the U.S. as a student. To obtain a passport to leave Ethiopia, Lemma needed a letter from a local level political leader. Believing he would be unable to obtain it in Addis Ababa because he was known as an enemy of the government, he obtained a letter from an official in a distant area through a friend. With this letter, he secured a passport and left Ethiopia without difficulty.
 
 
 9
 Lemma was admitted to the U.S. on a vocational student visa in June of 1987. He had already decided not to return to Ethiopia, but he made no claim for asylum on entry. Three months later, he traveled to Canada and applied for, and received, an F-1 nonimmigrant student visa, again making no claim for asylum. He failed to maintain his student status. In September of 1988, Lemma filed a request for asylum, which was denied in December of that year.
 
 
 10
 Lemma renewed his request for asylum after receiving an order to show cause why he should not be deported. Lemma submitted statements from three people who had known him in Ethiopia as well as a letter from his father. The letters state that Lemma was persecuted in the past for his political opinions and would be subject to persecution should he return to Ethiopia. He also submitted reports depicting Ethiopia's government as a frequent human rights violator and extremely intolerant of political dissent.
 
 
 11
 The IJ denied Lemma's request for asylum and withholding of deportation in October of 1989. The IJ found the only evidence of Lemma's arrests was his testimony, making Lemma's credibility central. The IJ found Lemma's fear of persecution unreasonable and his testimony as to his past persecution not credible because:
 
 
 12
 1) he was able to obtain a passport and leave Ethiopia;
 
 
 13
 2) he had held a government job as a high school teacher for a number of years before leaving;
 
 
 14
 3) he failed to apply for asylum for some time after arrival in the U.S.;
 
 
 15
 4) from July of 1985 until he left Ethiopia in June of 1987, he had not been mistreated by the government.
 
 
 16
 The BIA dismissed Lemma's appeal in July of 1993, finding the record supported the IJ's conclusion that Lemma was not credible. Like the IJ, the BIA noted significant discrepancies between Lemma's testimony and his asylum application. In a footnote, the BIA stated:
 
 
 17
 Because we conclude that the respondent's [Lemma's] asylum and withholding requests are not supported by credible testimony and evidence, we need not address his argument that he has established "past persecution" in Ethiopia.
 
 
 18
 The Attorney General may grant asylum to Lemma if he proves he is a "refugee" as defined by section 208(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1158(a). To establish that one is a refugee requires proof of either past persecution or a well-founded fear of future persecution in his own country because of his race, religion, political opinion, membership in a particular social group or organization, or because of nationality. Immigration and Nationality Act, Sec. 101(a)(42)(A); 8 U.S.C. Sec. 1101(a)(42)(A). The BIA's determination that Lemma was not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. Sec. 1105a(a)(4).
 
 
 19
 Entitlement to withholding of deportation under section 243(h) of the Act requires meeting a more stringent standard. The person must establish a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion. I.N.S. v. Stevic, 467 U.S. 407, 413 (1984).
 
 
 20
 Lemma insists the evidence established he had been persecuted in the past and had a well-founded fear of future persecution. He argues the evidence was consistent, believable, and corroborated by statements from others. As a matter of law, he claims the record does not provide substantial evidence for the BIA's finding that he was not credible.
 
 
 21
 Lemma attacks the four reasons the BIA gave for finding his testimony not credible. As to the fact he was able to obtain a passport, he cites Turcios v. I.N.S., 821 F.2d 1396, 1402 (9th Cir.1987), and Garcia-Ramos v. I.N.S., 775 F.2d 1370, 1374 & n. 7 (9th Cir.1985), for the proposition that possession of a passport indicates nothing about whether the government will persecute the possessor. In response, the Immigration and Naturalization Service (INS) cites cases which find possession of a passport a basis for inferring a person will not be persecuted on returning to his country. See e.g., Estrada-Posadas v. I.N.S., 924 F.2d 916, 920 (9th Cir.1991); Espinoza-Martinez v. I.N.S., 754 F.2d 1536, 1540 (9th Cir.1985). The I.N.S. further points out that if Lemma were a known opponent of the government, he could not have obtained a passport through normal channels as he did. We find that while Lemma's possession of a passport does not help him, certainly that fact alone is not fatal to his application.
 
 
 22
 Lemma insists that being allowed to teach young people despite government accusations of ideological "unsoundness," is not an illogical or an unreasonable element of his account. The INS contends there are inconsistencies in Lemma's being persecuted by the state, but nonetheless being allowed to receive a graduate degree, to work for the Ministry of Education as a high school teacher, and to live as an ordinary citizen in the substantial interludes between and after his alleged arrests. Although we do not find these facts necessarily inconsistent, we believe the inferences the IJ drew from their testimony in the context of the hearing are supported by substantial evidence.
 
 
 23
 Lemma denies his failure to apply for asylum immediately on entering the U.S. negatively reflects on his credibility. Certainly many of the immigration cases the parties cite involve people who have not applied for asylum until after having received an order to show cause why they should not be deported.[1] More troubling is that Lemma testified he did not apply for asylum until 16 months after he arrived in the U.S. because he did not understand the procedure. The INS points out that given Lemma left the U.S. for Canada for the specific purpose of getting an F-1 to replace an M-1 visa but failed to mention an asylum claim, he should be presumed to have knowledge of asylum procedures. The IJ could very well doubt Lemma's credibility on this basis, given that Lemma did not apply for asylum until a year after he obtained his F-1 visa.
 
 
 24
 Lemma argues his account of his mistreatment is consistent with reports of government abuses by Amnesty International, that he gave specific details of his mistreatment, and that a medical report documents his injuries. The INS does not deal with these points. The medical report describes what is now visible of Lemma's injuries but contains no speculation as to how the injuries may have been caused.[2] We find the Amnesty International and medical reports do corroborate Lemma's testimony as to past persecution.
 
 
 25
 Lemma criticizes the BIA's finding of inconsistencies between his application for asylum and his oral testimony. In his application, Lemma stated he had been required to attend political education meetings every three days after his release from prison in 1985. At the hearing, Lemma gave a series of confusing answers to whether he has heard of ninety day political orientation meetings, but clearly states he did not attend one. We do not find his testimony inconsistent with his application.
 
 
 26
 As the INS observes, this court " 'may not reverse the BIA simply because we disagree with its evaluation of the facts.' " De Valle v. I.N.S., 901 F.2d 787, 791 (9th Cir.1991) (quoting Diaz-Escobar v. I.N.S., 782 F.2d 1488, 1493 (9th Cir.1986). An IJ is not required
 
 
 27
 to believe the alien when his testimony is merely "unrefuted" and is "corroborated" by documentary evidence of general political violence in his country. An immigration judge alone is in a position to observe an alien's tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is, by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth. The courts of appeals should be far less confident of their ability to make such important, but often subtle, determinations.
 
 
 28
 Sarvia-Quintanilla v. I.N.S., 767 F.2d 1387, 1395 (9th Cir.1985).
 
 
 29
 There is some corroboration of Lemma's testimony. One notarized letter in Lemma's application mentions his 1976 and 1977 imprisonments. Another speaks of his 1985 imprisonment. A letter from Lemma's father states guards came to his house to question him about when Lemma would return. The medical report appears to be consistent with his injuries. It is not an appellate court's role however, to second-guess the IJ's credibility findings so long as those findings are supported by substantial evidence. There are a number of points on which the IJ and BIA could legitimately base a determination that Lemma was not credible. Lemma's explanation for his delay in filing for asylum could be doubted and his employment as a government teacher for four years also could call into question his claims about imprisonment, torture, and forced political education, as could the ease with which Lemma was able to leave Ethiopia.
 
 
 30
 Finding Lemma not credible, the BIA concluded there was no need to consider whether Lemma suffered past persecution, which would, by itself, make Lemma eligible for asylum. Immigration and Nationality Act, Sec. 101(a)(42)(A), 8 U.S.C. Sec. 1101(a)(42)(A); Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988). Lemma argues the BIA erred in perfunctorily dismissing this claim, and the IJ erred because his decision says the only evidence of Lemma's past persecution was his own testimony, ignoring the letters Lemma submitted corroborating his imprisonments and his medical report.
 
 
 31
 The INS agrees the IJ erred, but argues the BIA's review cured that error. In Elnager v. I.N.S., 930 F.2d 784, 787 (9th Cir.1991), the court found that where the BIA conducts a de novo review, errors by the IJ may be rendered harmless. The BIA's decision acknowledges the documents the IJ apparently ignored and it is possible the BIA took them into account in reaching the conclusion that Lemma's testimony was not credible. On the record before us, however, this court cannot be certain the BIA did take the corroborating information into account in considering the claim of past persecution because the BIA failed to consider that issue. It may be that while Lemma's testimony was not credible with regard to certain matters, it was credible and corroborated on the matter of his past persecution. We therefore remand this case to the BIA for a determination of whether Lemma was persecuted in the past.
 
 
 32
 We also dismiss Lemma's claim for attorney fees without prejudice, pending the BIA's review of his claim of past persecution.[3]
 
 
 33
 Petition for review DENIED in part and GRANTED in part. Remanded to the BIA for further proceedings.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Berroteran-Melendez v. I.N.S., 955 F.2d 1251 (9th Cir.1992), and Elnager v. I.N.S., 930 F.2d 784 (9th Cir.1991), for two examples of cases in which failure to apply for asylum immediately was not mentioned as a negative factor in evaluating asylum applications
 
 
 [2]
 In making the past persecution determination required by this disposition, we caution the BIA against relying on the incomplete medical report included in the record, AR at 193, unless Lemma is able to supply (or adequately explain the absence of) the missing pages of that document
 
 
 [3]
 28 U.S.C. Sec. 2412(b) permits a court to award reasonable attorney fees to the prevailing party in a civil action brought by or against a United States agency